Filed 5/10/23 Lai v. Wang CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| X. YOUNG LAI,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>WEN FANG WANG et al.,<br><br>        Defendants and Appellants. | H047118<br>(Santa Clara County<br>Super. Ct. No. 17CV308093) |

Plaintiff and attorney X. Young Lai formerly represented defendant Wen Fang Wang in a dissolution action in San Mateo County Superior Court. In this civil action subsequently filed in Santa Clara County Superior Court, Lai sued Wang and two attorneys (Frank Scott Moore and Michelle Melen) (collectively, defendants)[1] for malicious prosecution, abuse of process, and conspiracy and (as to Wang only) fraud, breach of contract, and common counts.

Defendants filed special motions to strike Lai's complaint under Code of Civil Procedure section 425.16 (anti-SLAPP motions).[2] The trial court granted the anti-SLAPP motions as to the causes of action for abuse of process, malicious prosecution, and

---

[1] Moore and Melen formerly or currently represent Wang. Moore represents himself, Wang, and Melen in this appeal.

[2] Unspecified statutory references are to the Code of Civil Procedure.

conspiracy. The court denied Wang's motion as to the fraud, breach of contract, and common counts causes of action.

Lai has appealed the trial court's order, and Wang has filed a cross-appeal. For the reasons explained below, we affirm the trial court's ruling granting defendants' anti-SLAPP motions as to the causes of action for abuse of process, malicious prosecution, and conspiracy.

In the cross-appeal, we conclude the trial court erred in ruling that the causes of action for fraud, breach of contract, and common counts do not arise from activity protected under the anti-SLAPP statute. We further decide that, because the litigation privilege renders inadmissible Lai's evidence for these causes of action, they lack minimal merit. Accordingly, we reverse the order denying Wang's anti-SLAPP motion on those causes of action and remand with directions to grant her anti-SLAPP motion.

## I. FACTS AND PROCEDURAL BACKGROUND[3]

A. *Factual Background*

Lai is an attorney licensed to practice in California.[4] In 2016, Wang asked Lai to represent her in a dissolution action. According to Lai, Wang falsely told him that she did not have the funds to retain an attorney for the dissolution action; owed rent and lacked sufficient funds to buy food; and had not received any distribution of assets before her separation.

Based on Wang's assertions about her financial condition, Lai agreed to represent Wang under a "retainer agreement." The agreement, titled "legal representation fee

---

[3] We draw the following facts from the complaint that was the subject of the anti-SLAPP motions (the first amended complaint) and the supporting declarations submitted in the trial court. We accept Lai's factual assertions as true for the purpose of resolving whether the trial court erred in its denial of the anti-SLAPP motions and consider only whether any contrary evidence from defendants establish their entitlement to prevail as a matter of law. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

[4] Lai is representing himself in this appeal.

2

agreement" (capitalization omitted), provided that Lai would request a court order under the Family Code for the payment of attorney fees from the opposing party. It stated in relevant part that the fee arrangement was based on an hourly fee of $300, "contingent upon the court's order for attorney's fees and costs to be paid by the other party." It also provided, "If we elect to terminate our representation, you will take steps reasonably necessary and will cooperate as reasonably required to free us of any further obligation to perform legal services, including the execution of any documents necessary to complete our withdrawal from representation. In such case, you [i.e., Wang] agree to pay for all legal services performed and expenses incurred before the termination of representation in accordance with the provision of this agreement." Wang and Lai signed the agreement in September 2016.

Lai initiated Wang's dissolution action in October 2016 in San Mateo County Superior Court (dissolution action). Lai made a court appearance on Wang's behalf in November 2016.

On January 25, 2017, Lai appeared at a hearing in the dissolution action. The question of spousal support arose. Wang's husband's attorney[5] informed the court that Wang's husband in August 2015 had sent Wang $160,000 by wire transfer. Following that statement from her husband's attorney, Lai told the court that "we" had not received "any documentation" stating that Wang's husband had given "[Wang] such a substantial amount" and that Lai believed Wang had received "eighty or seventy thousand [] dollars" to "pay back her mother's loan." Wang's husband's attorney responded that she could confirm the wire transfer transaction records showing Wang's husband had given Wang $160,000.

Following a recess, Wang's husband's attorney stated on the record that there were two wire transfers from husband to Wang: the first on July 13, 2015, for $89,290

---

[5] Consistent with the parties' briefing in this court, we refer to Wang's former partner as her husband.

3

and the second on August 13, 2015, for $75,000. Wang's husband's attorney stated "We confirmed the routing number, the bank account number, and the instructions, and gave it to opposing counsel." Later in the hearing, Lai stated that the $75,000 was actually Wang's "brother's money" and was "for investment purposes" and was "not [Wang's] money." The court did not credit Lai's characterization of the funds and decided the $75,000 was Wang's money for purposes of support. The court concluded that the sum "leaves [Wang] money to live on" while other family law issues were adjudicated. The hearing adjourned.

Lai concluded Wang had deliberately misled him about her financial situation. On January 25, 2017 (following the court hearing), Lai sent Wang an e-mail asserting that he had "been repeatedly lied to and constantly misinformed." Lai stated he was "terminating [his] representation now" and informed Wang she had 30 days to find a new attorney. Lai requested that Wang pay $1,876 in costs that included expert witness fees to his law office "immediately."

Wang and Lai engaged in subsequent e-mail communications. On January 29, 2017, Lai sent Wang an e-mail in which he accused her of multiple misrepresentations. Lai asserted that Wang had not initially told him about the two wire transfers she had received from her husband, but rather had told him she had "no funds in [the] bank, and [she] even so stated under penalty of perjury in [her] declarations."

On January 31, 2017, Lai e-mailed Wang a letter and a "final invoice." Wang responded in an e-mail dated February 1, 2017: "Mr. Lai, please be advised that in response to your demand for attorney fees I would first like to present this demand to the California State Bar. I believe your request for fees in excess of [$]22,000 for only 2 court dates to be unconscionable and shocking to the conscience. I would be more than happy to pay for your time in court under a quantum meruit theory. [¶] Accordingly, I would like this matter to be presented to fee arbitration with the State Bar of California. For now I am contemplating filing a complaint against you in [S]tate [B]ar court."

4

In February 2017, Melen replaced Lai as Wang's attorney in the dissolution action.

At some point thereafter, Wang filed a complaint against Lai with the State Bar of California.

B. *Procedural Background*

1. Current Civil Action and Fee Arbitration

In April 2017, Lai initiated this civil action by filing a complaint against Wang and as yet-unnamed "Doe" defendants in Santa Clara County Superior Court alleging three causes of action: breach of contract, common counts, and fraud.

Wang subsequently requested binding arbitration pursuant to the Mandatory Fee Arbitration Act (MFAA) (Bus. & Prof. Code, § 6200 et seq.) for her dispute with Lai over his attorney fees. On behalf of Wang, Melen filed a petition for fee arbitration pursuant to the MFAA. In November 2017, Melen filed a notice of stay of the civil action based on the fee arbitration.

In March 2018, Moore replaced Melen as Wang's counsel in the fee arbitration. Wang designated Melen as an expert in the arbitration.

Lai and Wang submitted arbitration briefs to a three-member arbitral panel from the Santa Clara County Bar Association. Moore submitted to the panel materials on Wang's behalf, including an arbitration brief. The brief argued the retainer agreement was unenforceable and that the amount of fees claimed by Lai was unreasonable. The brief's exhibits included as "Exhibit E" what the brief described as "bank statements." Exhibit E consists of a spreadsheet describing Wang's banking activity related to her "Discover Bank" account and containing handwritten notes in English and Chinese. The brief also attached as an exhibit a transcript of the January 25, 2017 hearing in the dissolution case.

Lai submitted a brief, arguing that Wang and her attorneys were attempting to defraud the tribunal through perjury and falsified documents. He asserted Wang had

5

admitted to him during the recess at the January 25, 2017 hearing that she "kept the $75,000 with her." Lai stated Exhibit E contained handwritten notes in Chinese that indicated Wang had given the "bank record" to him that apprised him of the $75,000 transaction before the hearing, but in fact he had never before seen the bank statement. Lai asserted Wang had "manufactured the evidence and her attorneys knew it and actively assisted her in doing it" and Lai could "prove this, easily." Lai disputed that he had had any "prior knowledge" of the $75,000 wire transfer Wang had received from her husband. He stated that he had not learned about "Wang's perjurious denial of the second transfer of the $75,000" until the recess that occurred at the January 25, 2017 hearing in the dissolution action.

The arbitration hearing was delayed, and Wang ultimately withdrew her request for arbitration. At an October 2018 case status review in the civil action, counsel informed the trial court that the matter would not proceed to arbitration. In response, the trial court lifted the stay.

### 2. First Amended Complaint

On January 14, 2019, Lai filed the operative first amended complaint (complaint). The complaint asserted six causes of action: fraud, breach of contract, common counts, malicious prosecution, abuse of process, and conspiracy. Lai named Wang's current and former attorneys (Moore and Melen) as defendants Doe 1 and Doe 2, respectively.

Lai's complaint did not specify the party or parties to whom each cause of action was directed. In the subsequent order at issue in this appeal, the trial court assumed that the fraud, breach of contract, and common counts claims (the first through third causes of action) were directed at Wang only. The parties do not dispute that interpretation.

Lai alleged in the first cause of action for fraud that Wang had falsely represented her financial condition in order to induce Lai to perform legal services for her at no cost. In the second cause of action for breach of contract, Lai alleged Wang had breached their retainer agreement. In the third cause of action for common counts, Lai alleged Wang

6

was indebted to Lai for the work he performed on her behalf, and she failed to pay him the reasonable value of the services he provided.

The other three causes of action—for malicious prosecution, abuse of process, and conspiracy—appear to have been directed at all defendants (Wang and the attorneys Moore and Melen). The malicious prosecution cause of action was based on the "malicious and false bar complaint" Wang filed against Lai, the presentation of certain fee declarations in the dissolution action, and conduct in the fee arbitration, including presenting a "falsified document" to the panel of arbitrators.[6] The abuse of process claim was based on the fee arbitration and a "forged document."[7] The conspiracy claim alleged defendants conspired to engage in "misrepresentations, falsification, abuse of process, and malicious prosecution." The claim also asserted attorneys Moore and Melen aided and abetted Wang by "committing repeated perjuries and a forgery, in furtherance of their own financial gains, such as Melen's requests for attorney's fees from the family court."

### 3. Anti-SLAPP Motions and Order

On January 25, 2019, pursuant to the anti-SLAPP statute, Wang filed a special motion to strike all six causes of action against her.

In support of her special motion to strike, Wang submitted a declaration. In the declaration, she stated her native language is Mandarin and she has limited proficiency in English. Wang maintained she had explained to Lai, prior to any hearing in the dissolution action, the amount and purpose of the money she had received from her husband. Wang stated that the money was to repay her mother and brother in Taiwan. Wang asserted she had given Lai documentation for "some of these transactions." Wang's declaration attached a number of exhibits, including the retainer agreement, financial documents, the declaration of counsel filed by Lai in the dissolution action, and a copy of the transcript of the January 25, 2017 hearing in the dissolution action.

---

[6] The complaint does not identify the "falsified document."
[7] The complaint does not identify the "forged document."

Regarding the January 25, 2017 court hearing, Wang stated that Lai had yelled at her outside the courtroom during a recess and had accused her of "lying about the $160,000 that was for [her] mother and brother."

Regarding her State Bar complaint against Lai, Wang stated another attorney with whom Wang was working on an unrelated matter had recommended she file the complaint. Wang "followed her recommendation and sent the complaint with the State Bar on or around March 2017."

Wang's attorneys Melen and Moore also filed an anti-SLAPP motion seeking to strike the causes of action asserted against them for malicious prosecution, abuse of process, and conspiracy. They asserted their communicative conduct including in the mandatory fee arbitration qualified as protected conduct under the anti-SLAPP statute and that Lai's lawsuit against the attorneys arose out of protected conduct. They furthermore maintained Lai could not demonstrate a reasonable probability of prevailing on the merits of any of his claims against the attorneys. Both Melen and Moore submitted supporting declarations.

Lai submitted an opposing declaration. His declaration attached a number of exhibits, including briefs and supporting documents that had been submitted in the fee arbitration, including the document submitted in the arbitration relating to Wang's banking activity (exhibit E).

On May 10, 2019, the trial court issued its written order granting defendants' anti-SLAPP motion as to the malicious prosecution, abuse of process, and conspiracy causes of action.[8] Although the court addressed the attorneys' anti-SLAPP motion and Wang's anti-SLAPP motion separately, it used the same analysis in granting the respective

---

[8] In addition to defendants' special motions to strike, the order also addressed Moore's and Melen's "Demurrer/Motion to Strike Plaintiffs' First Amended Complaint" and Wang's "Demurrer/Motion to Strike Plaintiff's First Amended Complaint." The trial court's rulings as to those motions are not at issue in this appeal.

8

motions and striking those causes of action. It denied Wang's anti-SLAPP motion as to the fraud, breach of contract, and common counts causes of action.

Lai filed a timely notice of appeal of the May 10, 2019 order. Wang filed a timely cross-appeal of the order.

## II. DISCUSSION

A. *Appealability and Scope of Appeal*

The parties have appealed the trial court's May 10, 2019 order deciding defendants' anti-SLAPP motions. Although the underlying civil action has not yet resolved, we have jurisdiction to review the trial court's rulings on the anti-SLAPP motions. (See § 425.16, subd. (i); § 904.1, subd. (a)(13).) " 'An appeal from an order granting or denying an anti-SLAPP motion is an exception to the nonappealability of interlocutory orders.' " (*Sandlin v. McLaughlin* (2020) 50 Cal.App.5th 805, 819.)

In addition to his appeal of the anti-SLAPP ruling, Lai also seeks this court's review of matters occurring after the entry of the May 10, 2019 order.[9] "Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from." (*Polster, Inc. v. Swing* (1985) 164 Cal.App.3d 427, 436.) We review the correctness of the order at the time it is rendered; matters occurring later are irrelevant. (See *Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069, 1073.) Lai has not persuaded us that we have jurisdiction over any matters, including those related to a cross-complaint later filed by defendants, occurring after the trial court's order on the anti-SLAPP motion. Therefore, we will not address them in this appeal.

---

[9] Lai points to a cross-complaint filed on May 21, 2019, by Moore and verified by Wang. It appears the trial court granted a stay of the cross-complaint and Lai then filed a motion to lift the stay and appoint a forensic expert. He contends the trial court's order should have denied the stay of the cross-complaint.

B.  *Anti-SLAPP Statute*

"The statute commonly called the anti-SLAPP statute (§ 425.16) 'allows defendants to request early judicial screening of legal claims targeting free speech or petitioning activities.' (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880–881.)  The anti-SLAPP statute provides a 'procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights.' (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056.)  The remedy 'authorizes a special motion to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)' (*Wilson*, at p. 884.)  By its own terms, the anti-SLAPP statute is to 'be construed broadly' in furtherance of its stated goals." (*Paredes v. Credit Consulting Services, Inc.* (2022) 82 Cal.App.5th 410, 423, fn. omitted (*Paredes*).)

" 'We review de novo the grant or denial of any anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity.' " (*Paredes*, *supra*, 82 Cal.App.5th at p. 423, quoting *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

"Litigation of an anti-SLAPP motion involves a two-step process.  First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.]  If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

In the first step, "courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for

10

liability.' [Citation.] The defendant's burden is to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)

The anti-SLAPP statute identifies four categories of protected activity. (§ 425.16, subd. (e)(1)–(4).) These include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" (*id*., subd. (e)(1)) and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" (*id*., subd. (e)(2)).

In the second step, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

Before turning to the application of section 425.16 to this case, we consider Lai's contention of illegality, which—if true—"would preclude application of the anti-SLAPP statute altogether." (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 761 (*Laker*).)

C. *Illegality*

Lai maintains defendants' conduct was not protected because they intentionally engaged in criminal activity in the fee arbitration. He relies primarily on the California Supreme Court's decision in *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*). In *Flatley*, our Supreme Court concluded that an attorney's demand letter and subsequent phone calls constituted criminal extortion as a matter of law and thus was unprotected by the anti-SLAPP statute. (*Id*. at pp. 328, 330.)

11

Lai asserts attorney Moore submitted a falsified document, consisting of a financial spreadsheet containing notes from Wang that Wang had written in Chinese, to the fee arbitration panel. Lai states that "[b]y virtue of Wang's notes" the document was "antedated" and constituted "evidence falsification" within the meaning of Penal Code section 134. Moreover, he asserts both attorneys (Moore and Melen) "encouraged Wang to produce the false document" and "offered it to the arbitration panel" and thereby committed "felonies of preparing and offering false evidence in violation of Pen[al] Code [sections] 134 and 132."

Defendants counter that they have not conceded that they engaged in illegal activity. They furthermore note that Lai never identified in his complaint the document that was purportedly manufactured or forged, how it was forged, or how the attorneys knowingly presented the false document to the fee arbitration panel. Addressing the spreadsheet, defendants assert it was immaterial to the arbitration and "mistakenly placed" as an exhibit to the brief instead of the bank records themselves.

The California Supreme Court has stated that "[w]e made it clear in *Flatley* that conduct must be illegal as a matter of law to defeat a defendant's showing of protected activity. The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an anti-SLAPP motion at the first step." (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 424, italics omitted.) The court in *Vasquez* observed that, in that case, the plaintiff's contention that there was an "illegal conflict of interest that infected the councilmember defendants' votes" was vigorously disputed and the claim of illegality "depend[ed] on inferences to be drawn from circumstantial evidence." (*Ibid*.) Given the disputed nature of the illegality of the defendants' actions, the purported illegality of their conduct did not preclude application of the anti-SLAPP statute. (*Id*. at pp. 424–425.)

In this case, defendants have not conceded they engaged in illegal activity, and Lai has produced no evidence that conclusively establishes any illegality as a matter of law.

12

Although he asserted that defendants had knowingly " 'forged or fraudulently altered or ante-dated' " documents (Pen. Code, § 132), Lai failed to present any evidence of forgery.  Instead of showing that any document was fraudulently altered or ante-dated, Lai contends that defendants cited a document in a misleading fashion.  Therefore, *Flatley* does not assist Lai.

We also reject Lai's argument that as a matter of "first impression" defendants should have the burden of controverting illegality in the first prong of the anti-SLAPP analysis.  He does not supply us any relevant legal authority for this argument, and we decline to apply it here.

The cases cited by Lai are distinguishable.  For example, in *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, the defendant law firm had allegedly engaged in illegal wiretapping of the plaintiff's telephone conversations.  (*Id*. at pp. 439, 446.)  The Second District Court of Appeal found "[u]nder no factual scenario offered by [the defendant] is such wiretapping activity protected by the constitutional guarantees of free speech and petition."  (*Id*. at p. 446.)  Here, by contrast, defendants were advocating on behalf of Wang to the arbitration panel, and such communications (unlike the wiretapping in *Gerbosi*) were not illegal as matter of law.  (See *ibid*.)  *Gerbosi* and the other cases cited by Lai do not support his contention that defendants' alleged conduct was illegal as a matter of law.

In his reply brief, Lai claims the "threat of filing and the act of filing the bar complaint" and the "manufacturing [of] physical evidence" were illegal.  He points to Wang's e-mail sent following his notification that he was terminating representation and asserts it "clearly indicates that unless [Lai] accepts the settlement, [Wang] would file a bar complaint."  While we need not consider new arguments raised in reply, we reject Lai's interpretation of the e-mail.  Wang's e-mail stated she wished to resolve the fee dispute through arbitration, that she believed his fees were unconscionable, and she was " 'contemplating filing a complaint against [Lai] in [S]tate [B]ar court.' "  Her e-mail

does not demonstrate as a matter of law that she committed extortion. (Cf. *Flatley*, *supra*, 39 Cal.4th at p. 330; see also *Geragos v. Abelyan* (2023) 88 Cal.App.5th, 1018, 1027 (*Geragos*) [concluding that e-mails that allegedly contained veiled threats to report an attorney's violations to the State Bar such as the implication that the fee agreement violated " 'multiple State Bar rules' " did not constitute extortion as a matter of law as the e-mails did not contain "a threat to file a State Bar claim *coupled with a demand for money*" and e-mails were related to "the alleged injury [the] client suffered"].)

For these reasons, we reject Lai's contention that we should reverse the trial court's order based on the illegality of defendants' conduct alleged in his complaint.

D. *Application of Anti-SLAPP Statute to Malicious Prosecution, Abuse of Process, and Conspiracy Claims*

We turn to whether the trial court erred in applying the anti-SLAPP statute to strike Lai's causes of action against defendants for malicious prosecution, abuse of process, and conspiracy.

1. Lai's Factual Allegations

Lai bases his cause of action for malicious prosecution on multiple acts allegedly committed by Wang and her attorneys Melen and Moore related to the dissolution action, the State Bar complaint, and the fee arbitration.

Regarding the dissolution action, the complaint asserts Melen had filed a stay of the civil action in November 2017 due to the fee arbitration. The complaint alleges that in December 2017, Melen "presented declarations to the family court that" Lai was "owed attorney's fees and costs in the amount of $25,776.43" and "[b]oth defendants" (presumably Wang and Melen) had "agreed and conspired together and acted in concert to intentionally conceal[] from the family court the fact that Wang was disputing the fees and filing a fee arbitration."

Regarding the State Bar complaint, the complaint alleges that, in the "context" of "extortion," Wang filed a "malicious and false bar complaint." The complaint alleges

14

Wang made a false declaration that "she had never received a notice of a client's right to arbitration." It alleges that Melen assisted Wang in "evading process and instituting the false bar complaint."

Regarding the fee arbitration, the complaint alleges that "[b]oth defendants . . . intentionally conceal[ed] from the panel arbitrators the fact that the invoices were represented to the family court disguised as an undisputed debt, which amounted to a judicial admission." It alleges that Moore became involved in the arbitration and then "knowingly mispresented the transcript of the family court hearing" and "intentionally presented a falsified document manufactured by Wang to the panel of arbitrators." Together, Melen and Moore "intentionally concealed the falsity of the document, by carefully redacting other exhibits" that would have "expose[d] that falsity." Rather than "rectify the fraud, deception and forgery, which has been imposed upon the family court, the panel of fee arbitrators, and [Lai]," the "defendants simply dismissed the fee arbitration [in] October, 2018."

Relating to the abuse of process cause of action, the complaint realleges the other allegations and also states "[t]he forged document and the intentional misrepresentations alleged herein were not designed to settle a fee dispute but to delay the resolution of the present action, to burden [Lai] financially, to harass [Lai], and to pressure [Lai] to give up valid claims, and all of Defendants' actions were made in an extortive context." "As such, Defendants intentionally used the arbitration for the purpose of perpetrating an injustice." The complaint does not identify or provide any particulars about the "forged document" referenced in the allegations or detail when it was presented.

The conspiracy claim alleges attorneys Moore and Melen "had a duty to abstain from injuring [Lai] through express misrepresentations and falsification of a document" and they breached that duty and "went beyond the performance of a professional duty to serve Wang, aiding and abetting her in committing repeated perjuries and a forgery, in furtherance of their own financial gains, such as Melen's requests for attorney's fees from

15

the family court." The claim alleges Wang, Melen, and Moore conspired to "commit the misrepresentations, falsification, abuse of process, and malicious prosecution, acting in concert."

### 2. Step One: Arising From Protected Activity

The anti-SLAPP statute " 'may apply to every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the judicial branch. By definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit. [Citation.]' [Citation.] Likewise, since 'the essence of the tort of abuse of process . . . [is] some misuse of process in a prior action[,] . . . it is hard to imagine an abuse of process claim that would not fall under the protection of the [anti-SLAPP] statute.' " (*Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 200–201 (*Maleti*).)

Lai argues that defendants failed to "prove" that Lai's claims for malicious prosecution, abuse of process, and conspiracy arose from protected activity. He asserts defendants did not identify "with particularity all allegations of protected activity."

Regarding the State Bar complaint allegations, Lai does not appear to contest on appeal that Wang's complaint to the State Bar was protected conduct. Nor does he contest that the allegations related to submissions made in the dissolution action likewise constitute protected conduct. We agree with Lai's implicit concessions. (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 480 [stating "all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding . . . are per se protected as petitioning activity by the anti-SLAPP statute"].)

Regarding the fee arbitration, Lai confines his arguments to the assertion that defendants acted illegally. Lai does not substantively address the factual allegations involving the fee arbitration, such as the submission of documents and briefs to the arbitration panel. We have already rejected Lai's contention that defendants' actions were illegal as a matter of law. We therefore turn to the question whether the conduct alleged in the complaint constitutes protected activity.

16

A fee arbitration "qualifies as an 'official proceeding authorized by law' ([] § 425.16) because it was conducted pursuant to statute as part of a regulatory scheme." (*Dorit v. Noe* (2020) 49 Cal.App.5th 458, 469 (*Dorit*).) Because fee arbitrations "are official proceedings, any statements in connection with issues considered in such proceedings" — such as statements and submissions made to the arbitrators— "are protected activity under the anti-SLAPP law." (*Bonni*, *supra*, 11 Cal.5th at p. 1016; see *ibid.* [discussing statements made in peer review proceedings]).

Nevertheless, Lai asserts that the allegations did not arise out of protected activity because the "evading of process and filing of a bar complaint" "provided only a background of a chain of actions that eventually culminated in the misconduct[] during the fee arbitration proceeding."

It is true that " 'allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute.' " (*Bonni*, *supra*, 11 Cal.5th at p. 1012.) However, we disagree that Lai's allegations related to the State Bar complaint merely provided context. In his complaint, Lai made specific allegations of wrongdoing related to the bar complaint in his malicious prosecution cause of action that were not in any background section. Therefore, defendants have carried their burden under the first step of the anti-SLAPP analysis.

We reject Lai's remaining arguments as to the first step of the anti-SLAPP analysis. Lai discusses at length the litigation privilege under Civil Code section 47, although he acknowledges that the scope of section 425.16 and Civil Code section 47 are "not identical." (See *Flatley*, *supra*, 39 Cal.4th at p. 323 [noting that litigation privilege and the anti-SLAPP statute are not substantively the same].) Lai points to subdivision (b)(2) of Civil Code section 47.[10] He maintains that this provision supports his

_____

[10] Civil Code section 47, subdivision (b)(2), states in part that: "This subdivision does not make privileged any communication made in furtherance of an act of intentional

17

contention that "the act of intentional destruction or alteration of physical evidence, along with any communication in furtherance thereof, is not protected by the anti-SLAPP statute" and that "[t]his should be the rule, whether or not illegality is established."[11] Lai cites no cases interpreting the anti-SLAPP statute that support his position. We decline to interpret section 425.16 in the novel manner urged by Lai.

For these reasons, we conclude defendants carried their burden in the first step of the anti-SLAPP analysis of showing that each claim supporting Lai's causes of action for malicious prosecution, abuse of process, and conspiracy rests on protected activity.

### 3. Step Two: Minimal Merit

Because defendants met their initial burden of showing that Lai's malicious prosecution, abuse of process, and conspiracy claims arose from protected activity, the burden shifted to Lai to demonstrate a probability of prevailing on the merits by showing that his claims have " 'at least "minimal merit." ' " (*Bonni, supra*, 11 Cal.5th at p. 1009.) "To meet this burden, a plaintiff cannot rely on its own pleading, even if verified [citation], but must present admissible evidence." (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 49.)

We address the malicious prosecution, abuse of process, and conspiracy causes of action in turn.

---

destruction or alteration of physical evidence undertaken for the purpose of depriving a party to litigation of the use of that evidence, whether or not the content of the communication is the subject of a subsequent publication or broadcast which is privileged pursuant to this section."

[11] Lai requests that we take judicial notice of legislative history related to Senate Bill No. 529 (1991-1992 Reg. Sess.), which amended Civil Code section 47. Lai assert the "documents" are "relevant" to support his "Supplemental Brief" (presumably his reply brief). Defendants filed an opposition to Lai's request contending the legislative history is irrelevant. We deferred consideration of Lai's request with the merits of this appeal. Because this legislative history is immaterial to our analysis here, we deny Lai's request for judicial notice. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

18

### a. Malicious Prosecution

A malicious prosecution cause of action has "four essential elements" (*Maleti*, *supra*, 82 Cal.App.5th at p. 203.) "First, there had to have been a prior action 'commenced by or at the direction of the defendant [that] was pursued to a legal termination in . . . [the] plaintiff's[] favor.' . . . Second, the defendant must have brought the prior action without probable cause. [Citation.] Third, the defendant must have initiated the prior action with malice. [Citations.] Fourth, the plaintiff must show resulting damage, which may include out-of-pocket losses of attorney fees and costs, as well as emotional distress and injury to reputation." (*Ibid.*)

Lai contends he demonstrated a probability of prevailing on his malicious prosecution claim. Lai asserts, for example, that no probable cause existed to bring the fee arbitration because Wang voluntarily dismissed the arbitration proceedings and defendants used "false evidence" thus demonstrating they knew the "underlying proceeding" lacked merit. Defendants counter that a fee arbitration cannot constitute the requisite prior action to establish the tort.

In *Dorit*, the First District Court of Appeal, Division Four, addressed whether a fee arbitration under the MFAA can serve as the basis for a malicious prosecution cause of action in the context of addressing step two of the anti-SLAPP analysis. (*Dorit*, *supra*, 49 Cal.App.5th at p. 471.) The court concluded that "a malicious prosecution claim cannot be based on an MFAA claim" and therefore decided it did not need to examine whether there was sufficient evidence to support the other elements of the tort. (*Ibid.*) The court discussed in detail the MFAA and the "simple and informal" nature of MFAA proceedings (*id.* at p. 467), observing that the Legislature enacted the MFAA scheme "to establish and administer an effective, inexpensive system of arbitration for fee disputes before local bar associations." (*Ibid.*) The court furthermore noted that the "tort of malicious prosecution serves two purposes: (1) preventing unscrupulous individuals from using the courts for nefarious ends, thereby clogging crowded court dockets; and

19

(2) compensating wronged individuals." (*Id*. at p. 474.) It reasoned that allowing a malicious prosecution claim to follow a MFAA arbitration would not serve the dual purposes of the tort, including because "MFAA arbitrations are not court proceedings, so allowing malicious prosecution based on an MFAA arbitration would not serve the first purpose." (*Ibid*.) Regarding the second purpose of the tort to compensate wronged individuals, the court noted that "MFAA arbitrations do not impose the same injury as most types of civil actions or proceedings." (*Ibid*.)

We agree with the court's analysis in *Dorit* and apply it here. We conclude that Lai cannot prove his malicious prosecution claim has minimal merit because it is predicated on the fee arbitration, which does not constitute a "prior action" for purposes of the tort of malicious prosecution.[12] We therefore affirm the trial court's ruling granting defendants' special motions to strike Lai's malicious prosecution claim.

### b. Abuse of Process

"The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).) " '[T]he essence of the tort [is] . . . misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice.' " (*Id*. at p. 1057.) "The tort of abuse of process has two elements: ' "[F]irst, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." ' " (*Maleti*, *supra*, 82 Cal.App.5th at p. 229.)

---

[12] In light of this conclusion, we need not reach Wang's alternative assertions that Lai's cause of action for malicious prosecution lacks minimal merit because he cannot prove the required elements of a lack of probable cause and malice.

As to the abuse of process claim, the trial court found the complaint and Lai's declaration was focused on the "fee arbitration statement and the arguments contained therein." The court decided that Lai had not met his burden of demonstrating a probability of prevailing on his claim, because it found "nothing in Lai's fee arbitration statement to support a prima facie showing that defendants entertained any ulterior motive or purpose in commencing fee arbitration or in presenting any argument in connection therewith."

On appeal, Lai maintains the trial court raised the issue of ulterior motive "sua sponte" (italics omitted) and erred by essentially "disregarding the wrongdoings during the arbitration." He argues we may "infer the requisite ulterior purpose" given that it "cannot be seriously argued that the evidence falsification was done without ulterior purpose." Defendants offer several counterarguments, including that the conduct alleged in the fee arbitration does not involve an abuse of process because it does not involve a court proceeding. We agree with defendants.

A fee arbitration pursuant to the MFAA is not a court proceeding (see *Dorit*, *supra*, 49 Cal.App.5th at p. 474), and the "MFAA arbitration was created specifically to avoid the need for clients to hire attorneys" (*id*. at p. 475). *Dorit* did not directly address an abuse of process claim. However, in other non-court proceeding contexts (such as administrative proceedings), courts have declined to recognize an abuse of process claim. Where a "defendant [takes] no action pursuant to authority of court, directly or by ancillary proceedings, no judicial process [i]s abused." (*Meadows v. Bakersfield S. & L. Assn.* (1967) 250 Cal.App.2d 749, 753.) Thus, "[a]pplication of the tort to administrative proceedings would not serve the purpose of the tort, which is to preserve the integrity of the court." (*Stolz v. Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1823.)

The complaint alleges defendants presented a "forged document" (presumably the spreadsheet attached to the arbitration brief) and "intentionally used the arbitration for the

21

purpose of perpetrating an injustice." Since there is no allegation in the abuse of process claim that defendants misused the power of the court as it relates to the fee arbitration, Lai has failed to show that his claim for abuse of process based on the fee arbitration has minimal merit.

Although Lai's arguments and allegations center on the fee arbitration, in other portions of the complaint Lai asserts the use of the superior court. Specifically the complaint alleges that Melen had filed a stay of the civil action in November 2017 due to the fee arbitration, but then, in December 2017, "presented declarations to the family court that" Lai was "owed attorney's fees and costs in the amount of $25,776.43" and "[b]oth defendants" (presumably Wang and Melen) had "agreed and conspired together and acted in concert to intentionally conceal[] from the family court the fact that Wang was disputing the fees and filing a fee arbitration."

Lai does not advance any argument as to how these allegations relate to his abuse of process cause of action, and the trial court did not interpret those allegations as related to it. Lai does not appear to challenge that interpretation. Moreover, an abuse of process claim does not exist "where process is used properly albeit with a bad motive." (*Abraham v. Lancaster Community Hospital* (1990) 217 Cal.App.3d 796, 826.) Based on our review of the record, we decide Lai did not substantiate his allegations with any evidence that Melen improperly presented declarations in the dissolution action.[13]

---

[13] Melen filed, on December 5, 2017, a declaration in the marital dissolution action in San Mateo County stating she was attorney of record in that case and was submitting a declaration in support of Wang's request for attorney fees based on the disparity of income and assets between Wang and her husband. She also filed an income and expense declaration on behalf of Wang on that date. The record indicates Melen filed another income and expense declaration signed by Wang and dated July 23, 2018. We discern no impropriety in the filing of these documents.

For these reasons, we decide that Lai has failed to show that his abuse of process cause of action has minimal merit.[14] Accordingly, the trial court did not err in granting defendants' anti-SLAPP motions to strike it.

### c. Conspiracy

Lai's claim on appeal challenging the trial court's resolution of the conspiracy claim appears to be based on the observation that (as the trial court correctly recognized) conspiracy is not an independent tort. (See *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511.) We understand Lai to argue on appeal that the trial court should therefore not have addressed his conspiracy claim in its ruling on the anti-SLAPP motions.

We are not persuaded Lai has demonstrated any error by the trial court. Lai's complaint alleged liability of the defendants under a conspiracy theory and the trial court appropriately evaluated that claim. (See *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 416 [evaluating conspiracy claim in anti-SLAPP context].)

Moreover, as in *Contreras*, Lai's conspiracy count was subject to being stricken under the anti-SLAPP statute because it relates to only protected conduct (in the arbitration and dissolution action). Having independently reviewed the record, we agree with the trial court that Lai failed to show that his conspiracy claim possesses minimal merit.

For these reasons, we affirm the trial court's order granting defendants' anti-SLAPP motions and striking Lai's causes of action for malicious prosecution, abuse of process, and conspiracy.

---

[14] In light of this conclusion, we need not reach defendants' assertion that Lai's cause of action for abuse of process lacks minimal merit because, even if it were the equivalent of a court action, filing or maintaining a lawsuit is not a proper basis for the tort of abuse of process.

E. *Trial Court's Denial of Lai's Request to Conduct Discovery*

The trial court denied Lai's request to conduct discovery under section 425.16. The court noted that Lai was seeking to conduct "limited discovery into Wang's bank transactions with regard to her mother and brother and their transaction to Wang's husband." The trial court noted Lai's request for discovery was procedurally flawed as he had not raised his request in a motion and, on the merits, failed to demonstrate good cause for the discovery.

As a rule, section 425.16, subdivision (g), stays discovery. However, the court "on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." (§ 425.16, subd. (g).) Good cause "requires a showing that the specific discovery sought is both 'needed . . . to establish a prima facie case' and 'tailored to that end.' " (*Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 891 (*Abir Cohen*).) "We review a trial court's denial of a motion to lift the stay for an abuse of discretion." (*Ibid.*)

Lai does not address the trial court's conclusion that he did not present a procedurally proper request, that is a "noticed motion" (§ 425.16, subd. (g)). On the merits, Lai fails to present any compelling argument for reversal of the trial court's decision. Lai states that the trial court's "conclusion [was] not well-founded, given the court's prior finding the parties were 'disputing' whether the documents were false."

Lai has not persuaded us that the record shows any abuse of discretion by the trial court. To the extent Lai is suggesting that he sought discovery in order to test the nature of defendants' evidence, that is not a sufficient reason for discovery. "[I]t is well established that '[d]iscovery may not be obtained merely to "test" the opponent's declarations.' " (*Abir Cohen*, *supra*, 40 Cal.App.5th at p. 891.) Lai provides no further argument or explanation as to how the limited discovery he requested (even assuming it was properly presented) would assist him in overcoming the anti-SLAPP motions. Based

24

on the circumstances presented here, we decide the trial court did not abuse its discretion in denying his discovery request.[15]

F. *Defendants' Motion for Sanctions*

Defendants ask that this court sanction Lai pursuant to section 907 and rule 8.276 of the California Rules of Court. Defendants argue that the appeal is objectively and subjectively frivolous and "has been used as a vehicle to continue this member of the bar's harassment of his former client and two of her lawyers." Defendants point out a number of unreasonable positions and arguments asserted by Lai in the trial court and this appeal: for example, his unfounded claim that they engaged in criminal conduct. Defendants also assert Lai's opening brief in this appeal failed to conform to the rules of appellate practice and his appendix improperly included postnotice of appeal pleadings. Defendants request over $62,000 in attorney fees and costs, which include work Moore performed in the trial court.

We are sympathetic to defendants' criticisms of Lai's opening brief and appendix, including his improper reference to events occurring after the appealed-from order. We agree that Lai's claims of illegal conduct by his former client and her subsequently retained attorneys are not supported by the evidence. Nonetheless, our high court has cautioned that, in order to "avoid a serious chilling effect on the assertion of litigants' rights on appeal," (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650) the punishment

---

[15] Lai also cites section 425.16, subdivision (c), and asserts in his opening brief that the anti-SLAPP motions were "made for ulterior purposes and frivolous in nature." Section 425.16, subdivision (c)(1), states "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to [s]ection 128.5." Lai argues "by their own admissions, a falsified document was presented to the arbitrators and no rectifying efforts had been made." We have rejected Lai's assertion that defendants conclusively admitted to wrongdoing and we have concluded defendants' motions to strike the malicious prosecution, abuse of discretion, and conspiracy claims had merit. We therefore reject Lai's conclusory argument that defendants' anti-SLAPP motions were frivolous.

of sanctions must be used "most sparingly to deter only the most egregious conduct." (*Id.* at p. 651.) We cannot conclude that Lai's appeal "is so totally and completely without any arguable merit as to justify an award of sanctions under those demanding requirements." (*McCluskey v. Henry* (2020) 56 Cal.App.5th 1197, 1208.) We therefore deny defendants' motion for sanctions.

G. *Order Denying Wang's Special Motion to Strike Breach of Contract, Fraud, and Common Counts Causes of Action (Cross-Appeal)*

In her cross-appeal, Wang challenges the trial court's rulings denying her special motion to strike the fraud, breach of contract, and common counts causes of action. Wang contends the "pillars" of Lai's fraud and contract claims against her involve communicative conduct arising out of her dissolution action and the trial court erred in deciding she had not satisfied the first step of the anti-SLAPP analysis. She maintains that "a client's communications to his or her counsel during the course of an ongoing case, whether in his office or at court, is protected conduct and is the purest form of petitioning conduct." She asserts that "[b]ecause the family law case is the only context in which the purported 'breach' and 'fraud' occurred, it necessarily involved [Wang's] petitioning conduct."

Lai counters that Wang's contentions in her cross-appeal are meritless and requests we impose sanctions against Wang for filing a frivolous appeal.[16] As explained further below, we agree with Wang that the trial court erred when it concluded that these causes of action did not arise out of protected conduct. As we reject Lai's contention that Wang's appeal is frivolous, we decline to impose sanctions.

---

[16] Lai also filed a motion to dismiss the cross-appeal as frivolous, which we deferred for consideration with this appeal. We decline Lai's request to this court to dismiss the cross-appeal without addressing the merits. We address Lai's motion for sanctions requesting attorney fees, *post.*

1. Lai's Factual Allegations

Lai's factual allegations as to his fraud cause of action included that Wang misrepresented her financial condition (such as stating she had no funds to retain an attorney) in order to induce him to "perform legal service for her at no cost." In reliance on her misrepresentations of financial hardship, Lai signed a retainer agreement with Wang that provided that he would request an order for attorney fees from the opposing party under "the applicable [F]amily [C]ode." Lai advanced legal fees for Wang and performed substantial services for her. Lai would not have done so had he known of Wang's actual intentions, and Wang took advantage of his "compassion."

Lai's breach of contract cause of action asserted that Wang breached their written retainer agreement by failing to pay for the legal services he performed and refusing to reimburse him for the expenses he incurred. He contended that Wang was liable for attorney fees and costs in the amount of $25,776.43.

Lai's cause of action for common counts alleged that Wang became indebted to Lai for his work, labor, services rendered at Wang's "special instance and request" and that she had not paid Lai for the reasonable value of the services he provided.

2. Step One: Arising From Protected Activity

Wang asserts that a client's communications to her attorney during the course of an ongoing case are protected conduct under the "plain language" of section 425.16, subdivisions (e)(1) and (e)(2). Wang argues that the communications she had with Lai concerned her "ability to fund her defense" and the substantive discussions about "an informal *Marvin*[17] distribution" only "arose because of" the dissolution action.

In civil cases, funding the services of an attorney to prosecute or defend a lawsuit is an act in furtherance of petitioning activity that is protected under the anti-SLAPP statute. (*Rusheen*, *supra*, 37 Cal.4th at p. 1056; see also *Sheley v. Harrop* (2017) 9

---

[17] *Marvin v. Marvin* (1976) 18 Cal.3d 660.

27

Cal.App.5th 1147, 1156–1157 [holding that allegations related to corporate wrongdoing "arose out of activity that is protected, specifically filing, maintaining, and funding a lawsuit"].) Based on these authorities, we decide that Lai's fraud, breach of contract, and common counts claims are based on communications between an attorney and client about the dissolution action, including the funding of that litigation. This communicative conduct is protected under the anti-SLAPP statute.

*Bowen v. Lin* (2022) 80 Cal.App.5th 155 (*Bowen*) is instructive. *Bowen* involved a countersuit by an attorney for, among other claims, breach of contract and fraud. The attorney alleged in the breach of contract claim that the client had "stopped cooperating" in a lawsuit and had fired him (*id*. at pp. 159–160). In the fraud claim, the attorney alleged that the clients had "committed fraud when they induced him to provide legal services in the [named] case" (*id*. at p. 160) knowing they would eventually have another attorney recover the unpaid balance of his fees.

The trial court had denied the clients' anti-SLAPP motions, concluding that the attorney's claims involved conduct that was not protected under the statute. (*Bowen*, *supra*, 80 Cal.App.5th at p. 160.) The Court of Appeal reversed, stating the trial court erred because the breach of contract action was based in part on the "extent of [the former client's] communications with [attorney]" about the litigation and "but for the decision to file, fund, and prosecute the [] case, [the attorney's] breach of contract cause of action would have no basis." (*Ibid*.) Moreover, as to the fraud claim, the Court of Appeal noted that the communications about settling the case were protected under the anti-SLAPP statute and "the parts of those communications" that were "allegedly concealed or withheld to induce [attorney] to represent [former clients] were similarly protected as corollary to those communications." (*Id*. at p. 162.)

As in *Bowen,* the allegations at the heart of Lai's breach of contract case against Wang relate to his communications with her in connection with the marital dissolution action. As Lai acknowledged in oral argument, Wang's duty to pay arose only because

Lai terminated the agreement due to Wang's alleged misrepresentations about her financial condition. These misrepresentations occurred in the course of their communications related to the dissolution action.

In Lai's fraud cause of action, he alleges that Wang told him in their discussions that she had no money in order to induce him to provide legal services at no cost. As in *Bowen*, these communications about funding the lawsuit fall are protected under the anti-SLAPP statute. Wang's alleged concealment of certain funds in her communications with Lai about the dissolution case were "similarly protected as corollary to those communications." (*Bowen*, *supra*, 80 Cal.App.5th at p. 162; see also *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 114 [communications about settlement were protected under the anti-SLAPP statute " 'even against allegations of fraudulent promises made during the settlement process' "].)

Lai argues that his claims do not involve protected conduct because the "communication took place only between the client and the attorney before litigation" and the communication was "for private financial interests." We do not agree that this timing is dispositive. To the contrary, "[s]tatements made before an 'official proceeding' or in connection with an issue under consideration or review by a legislative, executive, or judicial body, or in any other 'official proceeding,' as described in clauses (1) and (2) of section 425.16, subdivision (e), *are not limited* to statements made after the commencement of such a proceeding. Instead, statements made in anticipation of a court action or other official proceeding may be entitled to protection under the anti-SLAPP statute." (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 886–887.)

The authorities on which Lai relies are inapposite. For example, he cites *Drell v. Cohen* (2014) 232 Cal.App.4th 24, 30, quoting its language that " '[n]one of the purposes of the anti-SLAPP statute would be served by elevating a fee dispute to the constitutional arena.' " However, *Drell* involved a single claim for declaratory relief to determine the

status of an attorney fees lien (*id*. at p. 27) based on an assertion of the lien in a demand letter to an insurer (*id*. at p. 30). In that context, the appellate court in *Drell* reasoned that "[n]one of the purposes of the anti-SLAPP statute would be served by elevating a fee dispute to the constitutional arena, thereby requiring a party seeking a declaration of rights under an attorney lien to demonstrate a probability of success on the merits in order obtain equitable relief." (*Ibid*.)

By contrast, requiring Lai to show his breach of contract, fraud and common counts causes of action have minimal merit does serve the purposes of the anti-SLAPP statute, given that his claims are based on core communicative conduct between an attorney and client about funding litigation. To conclude otherwise would potentially chill a client's communications to an attorney about pending or soon-to-be-filed litigation. As stated in *Bowen*, "an attorney threatening litigation against former clients for decisions they made while the attorney represented them *would* chill the constitutional right of petition by preventing the clients from fully and openly discussing litigation matters among themselves, with that attorney, or with another attorney." (*Bowen*, *supra*, 80 Cal.App.5th at p. 163.)

Lai's other cited cases are even further afield, involving a dispute between a court reporting company and an attorney for unpaid invoices (see *Personal Court Reporters, Inc. v. Rand* (2012) 205 Cal.App.4th 182, 186, 190) and a real estate dispute between non-governmental parties involving street access that only incidentally involved governmental development permit applications (see *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 793–794).

We decide the trial court erred in concluding that Wang had failed to make a prima face showing that Lai's fraud, breach of contract, and common counts causes of action arose from protected conduct. We therefore turn to the second step of the anti-SLAPP analysis—that is, whether Lai has shown that the causes of action have at least minimal merit.

30

### 3. Step Two: Minimal Merit

Wang contends Lai failed to show the breach of contract, fraud, and common counts causes of action against her have minimal merit. Wang argues that the litigation privilege, found in Civil Code section 47, subdivision (b), bars the evidence underlying the claims.[18] Lai disputes Wang's assertions. Among other arguments, Lai asserts the litigation privilege does not apply to "contract-based claims" and the statements "were made from a client to an attorney, and no third party was involved." He also asserts that the "statements were made for purposes of negotiating a fee arrangement, or purely for economic self-interest, and therefore, not privileged."

The trial court did not consider whether Lai had established a probability of prevailing (§ 425.16, subd. (b)) as to his fraud, breach of contract, and common counts causes of action. However, the applicability of the privilege is one that concerns a pure issue of law. Therefore we will consider whether the privilege defeats these claims. (See *Greco v. Greco* (2016) 2 Cal.App.5th 810, 826.) Wang bears the burden of proving any affirmative defense, including the litigation privilege, while Lai "retains the burden to show, under the second step of the anti-SLAPP analysis, that he has a probability of prevailing on the merits of the claim." (*Laker*, *supra*, 32 Cal.App.5th at p. 769.)

Under the second step of the anti-SLAPP analysis, "a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.)

"A plaintiff cannot establish a prima facie case if the litigation privilege precludes a defendant's liability on the claim." (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648,

---

[18] Wang raises a number of additional contentions that Lai's claims lack minimal merit, such as that no valid contract was formed, Lai failed to perform under the contract, and Lai engaged in ethical violations. In light of our conclusion related to the application of the litigation privilege, we need not address Wang's other contentions.

661 (*Timothy W.*) [citing *Flatley*, *supra*, 39 Cal.4th at pp. 323–324].) "The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature . . . 'the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.)

"The principal purpose of the litigation privilege is to afford litigants and witnesses the utmost freedom of access to the courts without fear of harassment in subsequent derivative actions." (*Geragos*, *supra*, 88Cal.App.5th at p. 1031o.) "The privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony.' " (*Ibid.*, quoting *Silberg v. Anderson* (1990) 50 Cal.3d 205, 218.)

"Breach of contract claims are not categorically excluded from the privilege. Rather, if it applies turns on whether the privilege furthers the purposes behind it based on the underlying facts." (*Timothy W.*, *supra*, 85 Cal.App.5th at pp. 663–664.) The litigation privilege "will apply to contract claims only if the agreement does not 'clearly prohibit' the challenged conduct, and if applying the privilege furthers the policies underlying the privilege." (*Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757, 787.) The policies underlying the litigation privilege are " ' "to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions," ' " and to " 'promote[] effective judicial proceedings by encouraging " ' " 'open channels of communication and the presentation of evidence' " without the external threat of liability

32

[citation], and "by encouraging attorneys to zealously protect their clients' interests." ' " (*Id*. at p. 788.)

Wang's communications to Lai about the marital dissolution action, including her financial transactions with her husband and the funding of the litigation, constitute communicative acts that form the basis for the causes of action for fraud, breach of contract, and common counts. Furthermore, the statements to Lai such as that she had no funds bore directly on the family dissolution action, both in terms of how to fund the action and the characterization of marital assets.

We decide that application of the litigation privilege here would serve the purposes of the statutory protection. It would free litigants, like Wang, from the fear that their prelitigation communications to their attorneys and subsequent legal actions would subject them to harassment by derivative actions, including from their own attorneys.

*Timothy W.* is instructive. In that case, Timothy and Julie were engaged in dissolution proceedings. Related to those proceedings, Julie disclosed certain sensitive information to her private investigator, who then communicated it to others. Timothy sued Julie and the investigator for a number of claims, including in tort and contract. The appellate court concluded that all of the claims brought by Timothy should have been stricken under the anti-SLAPP statute. Regarding application of the litigation privilege, the court stated, inter alia, "the purposes of the litigation privilege are served, not frustrated, by applying the litigation privilege to Timothy's claim for breach of oral contract. A litigant must have the freedom to hire and speak to an investigator during pending litigation without the fear that her words could be the subject of collateral litigation. Accordingly, we find that the litigation privilege applies to the breach of contract claim against Julie." (*Timothy W.*, *supra*, 85 Cal.App.5th at p. 664.)

We reject Lai's arguments that the litigation privilege does not apply to his evidence underlying these causes of action. Contract-based claims may be subject to the privilege. (*Timothy W.*, *supra*, 85 Cal.App.5th at p. 663.) Lai's acknowledgement that

33

the "statements were made from a client to an attorney" appears to support rather than undermine the application of the privilege. Lai provides no authority for the proposition that allowing an attorney to attack his client in collateral proceedings based on their financial discussions related to a filed or soon-to-be filed dissolution action would serve the purpose of the litigation privilege.

Based on our independent review, we decide the record does not support Lai's claim that his communications with Wang solely involved a financial transaction. His citation to a federal case applying the California litigation privilege is not binding on this court, and is, in any event, inapposite, as it involved "conversations between potential co-counsel in the context of negotiating a fee-splitting agreement." (*Hart v. Larson* (S.D.Cal. 2017) 232 F.Supp.3d 1128, 1140.)

We have reviewed Lai's other arguments against application of the litigation privilege, and none persuades us that the privilege does not apply to Lai's causes of action for fraud, breach of contract, and common counts. Consequently, we decide that these claims cannot succeed due to the lack of admissible evidence. We conclude the trial court erred by not granting Wang's anti-SLAPP motion as to the causes of action for fraud, breach of contract, and common counts.

H. *Lai's Motion for Sanctions*

Lai seeks sanctions in the form of attorney fees in the amount of $32,385 against Wang and her attorney (Moore) because Wang's cross-appeal is "objectively frivolous" and taken to delay proceedings and the cross-appellant's appendix is "seriously defective." Because we have decided Wang's cross-appeal has merit, we deny Lai's request for appellate sanctions for pursuing a frivolous appeal. (See *Brown v. Beach House Design & Development* (2022) 85 Cal.App.5th 516, 534, fn. 3.)

We are also not persuaded by Lai's request for sanctions based on the allegedly faulty nature of cross-appellant's appendix. While Lai identifies three documents as having been "intentionally or negligently omitted" from the cross-appellant's appendix,

34

he does not explain how the absence of these documents preclude us from a meaningful review of the issues in this appeal and he notes that they are available elsewhere in the record (in his appendix).

For these reasons, we deny Lai's sanctions motion.[19]

### III. DISPOSITION

We affirm the trial court's ruling granting defendants' anti-SLAPP motions as to the malicious prosecution, abuse of process, and conspiracy causes of action. We reverse the trial court's ruling denying Wang's anti-SLAPP motion as the fraud, breach of contract, and common counts causes of action. We direct the court to enter a new order granting Wang's anti-SLAPP motion. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

---

[19] Shortly after Lai filed his renewed motion for sanctions, Wang filed, on August 23, 2022, an opposition to Lai's motion (opposition). The opposition is unauthorized and is hereby ordered stricken. (Cal. Rules of Court, rule 8.276(d).) Lai's request to file a reply to the opposition is denied.

_____
Danner, Acting P.J.

WE CONCUR:



_____
Wilson, J.




_____
Bromberg, J.



**H047118**
*Lai v. Wang et al.*